UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TREVOR BURNS,

               Plaintiff,

– against –

SARAH HINES, *Assistant District Attorney*, and UNKNOWN N.Y.C. DEPARTMENT OF CORRECTION OFFICIALS, *in their individual and official capacities*,

               Defendants.

**OPINION & ORDER**

21-cv-9469 (ER)

RAMOS, D.J.:

      Trevor Burns, proceeding *pro se*, brought this action against Assistant District Attorney Sarah Hines and Unknown N.Y.C. Department of Correction Officials (collectively, "Defendants") on November 8, 2021. Doc. 1. He asserted First and Fourteenth Amendment constitutional claims pursuant to 42 U.S.C. § 1983, and he sought declaratory and injunctive relief as well as punitive damages. *Id.* In brief, the claims concern ADA Hines' alleged failure to produce exculpatory information during his prosecution and her purported scheme to fabricate evidence to secure his conviction and shield it from collateral attacks. *See id.* at 6–18 ¶¶ 1–71.

      Before the Court is Hines' motion to dismiss. Docs. 26, 28. For the reasons stated below, the motion is GRANTED.

**I.    BACKGROUND**

      The facts underlying this action are discussed in the Court's November 16, 2022, Opinion and Order denying Burns' discovery motion pursuant to Rules 56(f) and 56(d) of the Federal Rules of Civil Procedure.[1] *Burns v. Hines*, No 21 Civ. 9469 (ER), 2022 WL

---

[1] Burns sought to obtain discovery pursuant to those rules based upon his contention that Hines' pending motion to dismiss should be construed as a motion for summary judgment. Doc. 30 at 4–14. The Court concluded that such construction was not necessary, and Burns' discovery request was thus premature. *Burns v. Hines*, No 21 Civ. 9469 (ER), 2022 WL 16963607, at *4–5 (S.D.N.Y. Nov. 16, 2022).

16963607, at *1–5 (S.D.N.Y. Nov. 16, 2022). They are largely reproduced here in light of Hines' pending motion to dismiss.

### A. Factual Background

Trevor Burns was arrested in April 1996 for the murder of Corey Henderson. Doc. 1 at 6 ¶ 3. A jury convicted Burns of murder in the second degree in June 1997. Doc. 28 at 8. At his trial, Davon Kelly,[2] a witness for the prosecution, testified that he knew Burns and witnessed the shooting that led to Henderson's death. Doc. 1 at 7–8 ¶¶ 12–19; *see also* Doc. 27-1 at 6–9, 16. Kelly, along with another witness, identified Burns as one of the shooters. Doc. 1 at 8 ¶ 17; *see also* Doc. 27-3 ¶ 17. Following Burns' conviction, the state court sentenced him to a term of 25 years to life in prison. Doc. 1 at 24 n.2. The conviction was affirmed on direct appeal. *See People v. Burns*, 18 A.D.3d 397 (2005), *aff'd* 6 N.Y.3d 793 (2006).

Approximately 18 years after his conviction, Burns claimed that he learned the following:

> In April 2015, while incarcerated at Green Haven Correctional Facility located in Stormville, New York, plaintiff read a [sic] article in the New York Post, pertaining to an individual being shot immediately upon his release from prison after serving fifteen (15) year [sic]. Plaintiff immediately recognized the victim[,] Simmons[,] as defendant's star witness [Kelly] who testified against plaintiff on June 3 and 4, 1997. . . .

Doc. 1 at 8–9 ¶ 21. In other words, Burns claimed that he recognized the photo of Simmons, realized that the prosecution actually called Simmons to the stand to impersonate Kelly, and falsely framed him for Henderson's murder. According to Burns, Hines "engaged in collusion . . . . coach[ing] Simmons on her theory of the case [and] providing him with manufactured facts." *Id.* at 7–8 ¶¶ 14–15.

---

[2] Kelly's first name is listed as "Devon" in some filings. The Court uses "Davon Kelly" here, as it is the spelling in Kelly's affidavit as well as the state Department of Corrections records. Doc. 1 at 45; Doc. 27-6.

In support of his claims, Burns acquired a sworn affidavit from Davon Kelly. Doc. 1 at 44–45. In relevant part, the affidavit states the following about Burns' prosecution:

> 4) The Manhattan ADA . . . asked me to come to Court and testify that I saw Trevor Burns at the murder scene. I told her I couldn't do that because I did not see him there.
>
> 5) At no point did I ever go to Court and testify or give any statements about Trevor Burns or related to his case or trial in any way.

*Id.* at 44 ¶¶ 4, 5. Burns' contentions about the purported perjured testimony, supported by Kelly's affidavit, formed the basis for several of the state and federal collateral attacks on his conviction.[3]

As relevant to the claims now before the Court, Judge Arlene D. Goldberg of the Supreme Court of the State of New York, New York County, issued a decision and order in March 2017 denying one of Burns' N.Y.C.P.L.R. § 440.10(1) motions, which contained allegations similar to the ones asserted in this case. *See* Doc. 27-1. Specifically, the motion was "premised on grounds of actual innocence, prosecutorial misconduct, newly discovered evidence," including the affidavit from Davon Kelly alleging that he did not in fact testify at Burns' trial, and "the claim that the defendant was deprived of his right to confront witness [Davon] Kelly . . . ." *Id.* at 4–5. Importantly, the Court concluded that there was sufficient proof that Davon Kelly did indeed testify at Burns' trial.[4] *Id.* at 16.

---

[3] Burns filed four successive motions pursuant to N.Y.C.P.L.R. § 440. *See* Doc. 28 at 12–14; *see also* Doc. 27-1; Doc. 27-2; Doc. 27-7. Burns also filed a federal petition for a writ of *habeas corpus*, which was denied in September 2011, *see Burns v. Ercole et al.*, No. 08 Civ. 8624 (HB), 2011 WL 3962499, at *1 (S.D.N.Y. Sept. 8, 2011). The Second Circuit affirmed the district court's judgment due to Burns' failure to make a "substantial showing of the denial of a constitutional right." *See Burns v. Ercole et al.*, No 11-2711, ECF No. 30 (quoting 28 U.S.C. § 2253(c) and *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)). Thereafter in 2018, Burns moved for permission to file a second or successive habeas petition pursuant to 28 U.S.C. § 2244(b)(3), which the Second Circuit denied. *Burns v. Ercole et al.*, No. 18-299, ECF No. 57 at 1–2 (denying motion for leave to file successive § 2254 petition on the basis that Burns failed to make a *prima facie* showing that the requirements of 28 U.S.C. § 2244(b) were satisfied). The 2018 petition included the argument that Kelly did not actually testify at his trial and "the State presented material perjured testimony from Simmons at Petitioner's trial." *Burns v. Ercole et al.*, No. 18-299, ECF No. 1-2 at 8.

[4] The Court noted that Kelly had been identified by his book and case number as well as his NYSID number, Doc. 27-1 at 16; that during Kelly's testimony at Burns' trial, he admitted to two arrests that

3

Critically, it noted that "[Davon] Kelly's claim in his affidavit that he was never produced to testify is belied by the Department of Corrections inmate movement history log which shows that he was transported from a facility at Riker's Island to New York Supreme Court on June 3, 1997," among other evidence.[5]  *Id.* at 16–18.

Hines opposed all of Burns' prior challenges and continues to dispute Burns' contentions regarding the authenticity of Kelly's testimony.  *See generally* Docs. 28, 30, 36, 51.  She specifically defers to the "numerous post-conviction motions" and *habeas corpus* proceedings wherein "two different New York State Supreme Court justices" and federal judges "resoundingly rejected" Burns' claims about Kelly's testimony.  Doc. 36 at 6.  Hines also cites to the evidence that she raised in those proceedings.  For example, she references the New York City Department of Correction ("DOC") records that confirmed that Kelly, who was incarcerated during Burns' trial, was the person produced by DOC and who indeed testified at Burns' 1997 trial.  *See, e.g.*, Doc. 36 at 6; Doc. 28 at 8.  She also cites to fingerprint reports that similarly confirm Kelly's identity.  *See* Doc. 28 at 8.

### B. Procedural History

Burns filed the instant complaint on November 8, 2021.  Doc. 1.  He asserted several claims that center around Hines' purported "collusion" to procure the perjured

---

appeared on his NYSID sheet, *id.* at 16–17; and that Kelly testified in a separate case regarding the death of Corey Henderson and "acknowledged having testified previously," in Burns' case, regarding the incidents at issue, *id.* at 17.  The court also noted that the unreliability of the affidavit wherein Davon Kelly stated that he did not testify at Burns' trial was "further enhanced by the fact that it comes almost twenty years after the witness testified and was solicited by an associate of the attorney for the defendant who handwrote the affidavit the witness signed on a visit to the correctional institution where the witness is incarcerated."  *Id.* at 19.  It concluded that the record before it led "to the inescapable conclusion that [Davon] Kelly's recantation or denial that he ever testified at defendant's trial is unreliable and unworthy of belief."  *Id.* at 20.

[5] In the instant case, Burns insists that these records were fraudulently created and produced by Hines. Doc. 42 at 10 ("In the interim of January 9, 2017 and January 17, 2017, Mrs[.] Hines personally accessed [the] DOC computer network with assistance by Unknown N.Y.C. DOC Official at specified location[s], and manipulated its inmate movement history log on Kelly's whereabouts. [ . . . ] Mrs. Hines['] fraudulent conduct during the CPL § 440.10 proceedings interfered with Plaintiff raising and prosecuting non-frivolous arguments."); *see also* Doc. 27-6 (containing DOC records showing that Kelly was sent to New York County Supreme Court on June 3, 1997, and was returned to NYCDOC custody on June 4, 1997). Nevertheless, Burns notes that he submitted requests under New York's Freedom of Information Law ("foil") to acquire additional DOC records in late 2017. Doc. 42 at 10.

testimony of an imposter witness and her alleged efforts to hide those actions after the fact by fabricating false prisoner movement logs showing that Kelly, not the imposter, was indeed produced at trial. *See generally* Doc. 1 at 1–22 ¶¶ 1–92. A summons was issued on December 1, 2021, Doc. 5, and Hines appeared on December 30, 2021, Doc. 8.

Thereafter on January 10, 2022, Hines filed a letter motion in anticipation of her motion to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6). Doc. 10 at 1. The Court granted Hines leave to file the motion to dismiss, Doc. 23, and Hines filed the motion on March 28, 2022, *see* Docs. 26, 28. In it, Hines asserted that Burns' suit is time-barred, subject to dismissal pursuant to the Eleventh Amendment and absolute immunity doctrines, precluded by the *Heck*[6] and *Rooker-Feldman*[7] doctrines, and otherwise fails to state a claim. *See generally* Doc. 28. Hines attached multiple exhibits to her motion, including documents from the several state and federal *habeas corpus* proceedings raised in the complaint. *See* Doc. 27, Exs. A–E.[8]

Burns then filed a discovery motion on April 29, 2022. *See* Docs. 30, 31. He requested a continuance to conduct discovery pursuant to Rules 56(f) and 56(d). Doc. 30. The Court instructed Hines to file a response to Burns' discovery requests, and stated that Burns would be given an opportunity to separately respond to Hines' motion to dismiss.

---

[6] "Under *Heck*, a claim that, if successful, would 'necessarily imply the invalidity' of the plaintiff's prior state conviction is 'not cognizable under § 1983' unless that conviction has already been invalidated." *Shapard v. Attea*, 710 F. App'x 15, 17 (2d Cir. 2017) (quoting *Heck v. Humphrey*, 512 U.S. 477, 487 (1994)).

[7] The *Rooker-Feldman* doctrine "stands for the 'clear principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments.'" *Brodsky v. New York City Campaign Finance Board*, No. 21 Civ. 5004 (ER), 2022 WL 2819090, at *2 (S.D.N.Y. July 19, 2022).

[8] The exhibits specifically include the following: (1) the state court's March 2017 Amended Decision and Order as to Burns' C.P.L. 440.10 motion, Doc. 27-1; (2) the state court's 2017 Certificate Denying Leave to Appeal, Doc. 27-2; (3) the prosecution's 2016 Affirmation in Opposition to Burns' Motion to Vacate Judgment, Doc. 273; (4) a 1996 Letter from Davon Kelly; (5) the prosecution's 2017 Sur-Reply Affirmation as to Burns' Motion to Vacate Judgment, Doc. 27-5; (6) the DOC production records and prisoner movement log for Davon Kelly, Doc. 27-6; (7) the state court's 2020 Decision and Order as to Burns' fourth C.P.L. 440.10 motion, Doc. 27-7. *See also* Doc. 27.

Doc. 35 at 2.  Hines responded to the discovery requests on June 6, 2022.  Doc. 36.  The response was served by mail the same day.  Doc. 37.

Thereafter, Hines filed a letter indicating that Burns had failed to file a timely reply and asking the Court to deem Burns' discovery motion fully briefed on July 26, 2022.  Doc. 38.  The Court granted that request.  Doc. 40.

On November 16, 2022, the Court issued an Opinion and Order denying the discovery motion and directing Burns to respond to Hines' motion to dismiss by January 16, 2023.  Doc. 41.  Burns timely filed his opposition on December 19, 2022, Doc. 42, and thereafter filed a supplemental memorandum in opposition of Hines' motion to dismiss on December 27, 2022, Doc. 46.  Hines replied on January 18, 2023.  Doc. 51.

## II.   LEGAL STANDARDS

### A.  Rule 12(b)(1)

The Court must dismiss the case for lack of subject matter jurisdiction if the Court "lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)).  The party asserting subject matter jurisdiction bears the burden of establishing that jurisdiction exists by a preponderance of the evidence.  *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova*, 201 F.3d at 113).  The Court accepts all material factual allegations in the complaint as true, *Morrison*, 547 F.3d at 170 (quoting *Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006)), but it does not presume the truthfulness of the complaint's jurisdictional allegations, *Frisone v. Pepsico, Inc.*, 369 F. Supp. 2d 464, 469–70 (S.D.N.Y. 2005).  When evaluating a Rule 12(b)(1) motion, the Court may consider evidence outside of the pleadings to resolve the disputed jurisdictional fact issues.  *Zappia Middle E. Constr. Co. Ltd. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000); *see also Morrison*, 547 F.3d at 170 (citing *Makarova*, 201 F.3d at 113).  The Court should refrain from drawing inferences in favor of the party

asserting subject matter jurisdiction on a Rule 12(b)(1) motion. *People United for Child. Inc. v. City of New York*, 108 F. Supp. 2d 275, 283 (S.D.N.Y. 2000) (citation omitted).

When the issue before the Court involves a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6), the Court must consider the Rule 12(b)(1) motion first, *Baldessarre v. Monroe-Woodbury Cent. Sch. Dist.*, 820 F. Supp. 2d 490, 499 (S.D.N.Y. 2011), *aff'd*, 496 F. App'x 131 (2d Cir. 2012), because "disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction," *Chambers v. Wright*, No. 5 Civ. 9915 (WHP), 2007 WL 4462181, at *2 (S.D.N.Y. Dec. 19, 2007) (internal quotation marks and citation omitted).

### B. Rule 12(b)(6)

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

When determining whether that standard has been met, the Court may consider the complaint itself, as well as all documents attached thereto or incorporated therein. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002); *Foros Advisors LLC*, 333 F. Supp. 3d 354, 357 (S.D.N.Y. 2018). A document is incorporated when it is referenced in the complaint or when its terms and effects are relied upon heavily such that it may be considered "integral" to the pleadings. *Chambers*, 282 F.3d at 152–53 (citation omitted); *see also Palin v. N.Y. Times Co.*, 940 F.3d 804 (2d Cir. 2019); *Beauvoir v. Israel*, 794 F.3d 244, 248 n.4 (2d Cir. 2015) (quoting *Roth*, 489 F.3d at 509) ("It is well established that '[d]ocuments that are attached to the complaint or

7

incorporated into it by reference are deemed part of the pleading and may be considered.'").

To survive a Rule 12(b)(6) motion, the plaintiff must allege sufficient facts to show more than a "mere possibility" that a defendant has acted unlawfully. *Twombly*, 550 U.S. at 557. This "flexible 'plausibility standard'" is not a heightened pleading standard, *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 n.3 (2d Cir. 2007) (internal quotation marks and citation omitted), and "a complaint . . . does not need detailed factual allegations" to survive a motion to dismiss, *Twombly*, 550 U.S. at 555. The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal quotation marks and citations omitted).

Accordingly, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014); *see also Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable...."). However, to the extent that the exhibits attached to the complaint credibly contradict the allegations attached within the complaint itself, the Court may conclude that the allegations are not, in fact, plausible. *Beauvoir*, 794 F.3d at 248 (concluding that a "threadbare recital" in the complaint was contradicted by the attached exhibit, and Plaintiffs thus failed to plausibly allege their claim).

Where a complaint was filed by a *pro se* plaintiff, it must be construed liberally, and the court must interpret the complaint "to raise the strongest claims that it suggests." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 475, 474 (2d Cir.2006)) (internal quotation marks omitted). Nonetheless, a *pro se* complaint must state a plausible claim for relief "sufficient to raise a 'right to relief above the speculative level.'" *Jackson v. NYS Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## III.  DISCUSSION

### A.  Statute of Limitations

To determine the applicable statute of limitations for a § 1983 claim, 42 U.S.C. § 1988 instructs district courts to borrow from analogous state law. *Board of Regents of University of State of N.Y. v. Tomanio*, 446 U.S. 478, 485 (1980) (citing *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 465 (1975)). The applicable statute of limitations for § 1983 actions in the State of New York is three years. *See Owens v. Okure*, 488 U.S. 235, 251 (1989) (applying New York's three-year statute of limitations governing general personal injury actions to Section 1983 claims).

"While state law supplies the statute of limitations for claims under [Section] 1983, federal law determines when a federal claim accrues." *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994). Under federal law, a claim generally accrues "when the Plaintiff knows or has reason to know of the injury which is the basis of his action." *Covington v. City of New York*, 171 F.3d 117, 121 (2d Cir. 1999) (internal quotation marks omitted).

Given this authority, Burns' claims are clearly time-barred. According to Burns, he discovered in April 2015 that Hines had used an imposter witness to secure his conviction. Doc. 1 at 7–9 ¶¶ 14–15, 21. And he concedes that, as of March 31, 2017, when the state court "summarily denied plaintiff's CPL §440.10 motion," he had knowledge about "the DOC Inmate Movement History Log on Kelly's alleged

9

movement," and "other fabricated evidence."⁹  *Id.* at 14 ¶ 50.  Accordingly, Plaintiff "kn[ew] or ha[d] reason to know of the injury which is the basis of his action" and his claim accrued as of—at latest—March 31, 2017.  *Covington*, 171 F.3d at 121; *see also* Doc. 27-1 at 16–18 (considering the DOC movement log that was produced in early 2017); *see also* Doc. 27-6.  Given that he did not file the complaint until more than four years after that date, on November 8, 2021, Burns' claims are barred by the statute of limitations.

Burns insists that "[b]ased on the paucity of information I accumulated over the course of the years[,] once assembled and critiqued in August 2019, only then have I had [sic] reason to believe defendant Sarah Hines was personally responsible for violating my First and Fourteenth Amendment rights as indicated in the complaint."  Doc. 30 ¶ 8; Doc. 42 at 23 (contending that "Plaintiff had absolutely no idea of Mrs. Hines' collusion with an Unknown DOC Official and administrative investigatory acts of changing entries contained in the DOC inmate movement log in January 2017").  He adds that he "only knew or had reason to know in August 2019, after he assembled all information from home, his private investigator, and made comparison with the DOC inmate movement history log".  Doc. 42 at 23.  This assertion is not only self-serving, but it is also belied by the record, including the complaint that Burns filed in this action.  *See* Doc. 1 at 7–9 ¶¶ 14–15, 21.  Additionally, it fails to contend with the federal standard that applies to the accrual of his claims.  Indeed, Burns' claim accrued when he "kn[ew] or ha[d] reason to know of the injury which is the basis of his action," *Covington*, 171 F.3d at 121, not when the information was assembled to his liking and he was otherwise ready to "critique[]" it in preparation of the instant lawsuit, Doc. 30 ¶ 8; Doc. 42 at 23.

Because Burns had reason to know of his purported injuries as of March 2017, the complaint is dismissed in its entirety as time-barred.

---

⁹ Indeed, Burns made several FOIL requests regarding the DOC logs in the fall of 2017.  Doc. 42 at 10.

**B. Immunity**

In general, "state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogate[d] the states' Eleventh Amendment immunity . . . ." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (internal quotation marks and citation omitted, alteration in original). "[T]he immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Id.* (internal quotation marks and citation omitted). This immunity shields States and their agents from claims for money damages, injunctive relief, and retrospective declaratory relief. *See Green v. Mansour*, 474 U.S. 64, 72–74 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–02 (1984).

Prosecutors are immune from civil suits for damages for acts committed within the scope of their official duties where the challenged activities are not investigative in nature but, rather, are "intimately associated with the judicial phase of the criminal process." *Giraldo v. Kessler*, 694 F.3d 161, 165 (2d Cir. 2012) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)) (internal quotation marks omitted); *see also Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (absolute immunity is analyzed under a "functional approach" that "looks to the nature of the function performed, not the identity of the actor who performed it" (internal quotation marks and citations omitted)). The Second Circuit has held that "absolute immunity shields work performed during a postconviction collateral attack, at least insofar as the challenged actions are part of the prosecutor's role as an advocate for the state." *Warney v. Monroe Cnty.*, 587 F.3d 113, 123 (2d Cir. 2009) (noting that "a prosecutor's function depends chiefly on whether there is pending or in preparation a court proceeding in which the prosecutor acts as an advocate"); *Buari v. City of New York*, 530 F. Supp. 3d 356, 381 (S.D.N.Y. 2021) (holding that the prosecutor's "alleged actions were integral to defending [a] conviction against a post-conviction attack and are therefore protected by absolute immunity.")

The complaint is therefore also properly dismissed on immunity grounds. The state has neither waived its immunity, nor has Congress abrogated it. Additionally, the record makes clear that Burns seeks injunctive relief, retrospective declaratory relief, and punitive damages—relief that is barred by the Eleventh Amendment, despite the manner in which Burns may have chosen to characterize his claims for the purposes of this motion. *Mansour*, 474 U.S. at 72–74 (concluding that states and their agents are immune from suits for money damages, injunctive relief, and retrospective declaratory relief); *see also* Doc. 42 at 16 (stating that Burns seeks prospective injunctive and declaratory relief "to stop Mrs. Hines' continuous violation of his First and Fourteenth Amendments" [sic]). The complaint specifically states that Burns seeks a declaratory judgment "stating that the acts and omissions described herein," which allegedly occurred between 1996 and 2017, "*violated* plaintiff's First and Fourteenth Amendment Rights," and otherwise requests an injunction ordering the disclosure of information related to his 1997 conviction.[10] Doc. 1 at 27–28 (emphasis added).

However, those alleged acts and omissions were completed as of 2017, when, according to Burns, Hines purportedly withheld post-conviction evidence, altered entries contained in the DOC inmate movement history log, and created fake records supporting those entries. Doc. 42 at 17. Burns' assertions are clearly based on conduct that took place years ago. As Hines states in the reply brief, "[t]here is nothing 'on-going' or prospective about an alleged 'manipulation' of the Kelly log by ADA Hines and submission to the court in opposition to plaintiff's CPL 440 motion. The creation of a 'fake' record is a singular act that has no ongoing or continuous element to it." Doc. 51 at 13.

Additionally, there is no question that the alleged conduct at issue here stemmed from Hines' official duties as a prosecutor and were intertwined with the judicial phase of

---

[10] Burns also requests punitive damages for this conduct. Doc. 1 at 28.

12

the criminal process. *Kessler*, 694 F.3d at 165. All of the purported acts that Burns complains of took place either in furtherance of his prosecution or in defense of his multiple collateral attacks on his conviction.

Burns' claims are thus barred by the Eleventh Amendment of the United States Constitution and the doctrine of absolute immunity.[11]

### C. Failure to State a Plausible Claim

Finally, Hines alleges that Burns failed to state a claim or otherwise met minimum plausibility standards. Doc. 28 at 26; Doc. 51 at 16. Because the Court concludes that the claims are barred by the applicable statute of limitations, as well as the immunity doctrines discussed herein, it will not address the merits of Burns' claims. *Baldessarre*, 820 F. Supp. 2d at 499; *Wright*, 2007 WL 4462181, at *2 ("A court presented with a motion to dismiss under both Rules 12(b)(1) and 12(b)(6) must decide the 'jurisdictional question first because disposition of a Rule 12(b)(6) motion is a decision on the merits, and, therefore, an exercise of jurisdiction.'") (quoting *Magee v. Nassau Cnty. Med. Ctr.*, 27 F. Supp. 2d 154, 158 (E.D.N.Y. 1998)).

Nevertheless, the Court notes that a review of the record in this case, in addition to the records pertaining to Burns' direct appeal and the numerous other state and federal

---

[11] There is also a strong basis to conclude that Burns' claims are barred by the *Heck* and *Rooker-Feldman* doctrines. Under the *Heck* doctrine, "a plaintiff may not assert a § 1983 claim for damages for 'harm caused by actions whose unlawfulness would render a conviction or sentence invalid,' unless the plaintiff first 'prove[s] that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.'" *Dunbar v. Heinmiller*, 830 F. App'x 367, 368 (2d Cir. 2020) (quoting *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994)). Here, Burns' claims would imply the invalidity of his conviction; however, his conviction has not been reversed, expunged, or otherwise declared invalid as required. To the contrary, numerous state and federal courts have repeatedly affirmed the soundness of his murder conviction over the course of the past two decades.

Similarly, the *Rooker-Feldman* doctrine precludes lower federal courts from exercising appellate jurisdiction over final state court judgments. *Lance v. Dennis*, 546 U.S. 459, 463 (2006). In this case, after losing in his direct appeal and collateral attacks in state court, Burns now "complain[s] of injuries caused by state-court judgments rendered before the district court proceedings commenced and invit[es] district court review and rejection of those judgements." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005). That is the exact type of conduct barred by the *Rooker-Feldman* doctrine.

collateral attacks on his conviction, confirm the soundness of his criminal prosecution and the final judgement against him.

## IV. CONCLUSION

For the reasons stated above, Hines' motion is GRANTED, and the complaint is dismissed in its entirety.

The Clerk of Court is respectfully directed to terminate the motion, Doc. 26, and to close the case. The Clerk of Court is further directed to mail this Opinion and Order to Burns at the following address:

>   Trevor Burns
>   97-A-6087
>   Groveland Correctional Facility
>   7000 Sonyea Road
>   P.O. Box 50
>   Sonyea, New York 14556-0050

It is SO ORDERED.

Dated:   March 29, 2023
         New York, New York

                                              _____
                                              EDGARDO RAMOS, U.S.D.J.